UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ADRIANA RIVERA,
      **-Plaintiff**


  **-vs-**                                  **3:06-CV-00531 (TPS)**


**CORPORATE RECEIVABLES, INC.**
      **-Defendant**

### RULING ON PLAINTIFF'S
### APPLICATION FOR ATTORNEY'S FEES AND COSTS

Plaintiff Adriana Rivera seeks attorney's fees and costs pursuant to 15 U.S.C. § 1692 *et seq*. Plaintiff's application for attorney's fees and costs, submitted by her counsel Daniel Blinn, Esquire, requests a fee award of $30,652.75, plus costs of $92.59. The total amount requested is $30,745.34. Defendant Corporate Receivables, Inc. ("CRI") opposes plaintiff's motion. For the reasons set forth herein, plaintiff's motion for attorney's fees and costs **[Dkt. #68]** is **GRANTED,** but with significant reductions. Plaintiff is awarded $9,195.83 in attorney's fees and $92.59 in costs, for a total of $9,288.42.

### I.   <u>Facts</u>

On April 6, 2006, plaintiff Adriana Rivera filed a two-count complaint against CRI alleging specific violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as well as a state law claim for intentional infliction of emotional

distress. These claims arose from CRI's efforts to collect on an unpaid credit card account used to purchase a motorcycle. Plaintiff was a cosigner on that credit card account. CRI filed a motion to dismiss the claim of intentional infliction of emotional distress pursuant to Fed. R. Civ. P. 12(b)(6) on July 17, 2006 **[Dkt. #13]**, which was successfully opposed by plaintiff. On March 22, 2007, CRI filed a $4,000 offer of judgment, inclusive of attorney's fees, which was rejected by plaintiff. The matter was subsequently tried to a jury on October 9 and 10, 2007. 28 U.S.C. § 636(c).

Pursuant to the first count of her complaint, plaintiff attempted to prove at trial that defendant CRI, through its employee Jose Sobrino ("Sobrino"), engaged in seven distinct violations of the FDCPA.[1] Pursuant to the second count of her

---

[1] Plaintiff attempted to prove that CRI violated the FDCPA by (1) engaging in conduct the natural consequence of which was to abuse, oppress or harass the plaintiff in violation of 15 U.S.C. § 1692d; (2) making false, deceptive or misleading statements or representations in violation of 15 U.S.C. § 1692e; (3) threatening to take any action that cannot legally be taken or that it did not intend to take in violation of 15 U.S.C. § 1692e; (4) representing that nonpayment of the debt would result in the plaintiff's arrest or imprisonment in violation of 15 U.S.C. § 1692e; (5) falsely representing or implying that the plaintiff had committed a crime in violation of 15 U.S.C. § 1692e; (6) failing to state during the initial telephone conversation that it was attempting to collect a debt and that any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e; and (7) failing to give the plaintiff written notice of the amount of the debt, the name of the creditor to whom the debt was owed, a statement regarding the plaintiff's right to dispute the debt and to require the defendant to verify the debt within five days after the initial communication

complaint, plaintiff offered evidence of her claim for intentional infliction of emotional distress and actual damages. Among the several full exhibits placed into evidence by plaintiff was a "Stipulation of Uncontested Facts and Law" which conceded one of the seven claimed FDCPA violations. Specifically, as referenced by Attorney Blinn in his closing argument, the parties stipulated that CRI had violated 15 U.S.C. § 1692g ("the stipulated violation") by failing to give plaintiff the required timely written notice of the debt, its collection, and her rights to dispute or verify the debt in question.

After deliberation, the jury returned a verdict in plaintiff's favor on the conceded 15 U.S.C. § 1692g violation, awarding statutory damages in the amount of $1,000. **[Dkt. #67].** The jury found for defendant CRI on the six other claimed FDCPA violations and on plaintiff's claim of intentional infliction of emotional distress. Further, the jury found that plaintiff had not proven any actual damages. Plaintiff filed her motion for attorney's fees and costs **[Dkt. #68]** with the required accompanying affidavit **[Dkt. #70]** on October 24, 2007. Defendant filed its brief in opposition on November 14, 2007. **[Dkt. #73].**

## II.  Discussion

### A. Offer of Judgment

---

in violation of 15 U.S.C. § 1692g.

Rule 68 of the Federal Rules of Civil Procedure provides, in relevant part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . . An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. . . .

Fed. R. Civ. P. 68. The purpose of Rule 68 is to encourage settlement and avoid litigation by prompting the parties to evaluate the risks and costs of litigation, and to balance them against the likelihood of success at trial. ADVISORY COMMITTEE NOTE ON RULES OF CIVIL PROCEDURE, REPORT OF PROPOSED AMENDMENTS, 5 F.R.D. 433, 483 n. 1 (1946); Marek v. Chesny, 473 U.S. 1, 5 (1985). The Supreme Court has held that Rule 68 requires that any offer allow "judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued." Marek, 473 U.S. at 6.

Accordingly, costs and fees must be included in any valid offer of judgment. This can be accomplished in either of two ways, depending on the phrasing of the offer. If the offer contains language that indicates that fees and costs are included, then that offer represents an aggregation of projected damages and fees and costs accrued to that point. Id. Alternatively, if the offer is

silent as to fees and costs or states that they are not included, the court is required by the Rule to calculate an additional amount which, in its discretion, it determines to be sufficient to cover costs and fees. Id. "If a plaintiff chooses to reject a reasonable offer, then it is fair that he not be allowed to shift the cost of continuing the litigation to the defendant in the event that his gamble produces an award that is less than or equal to the amount offered." Delta Airlines, Inc. V. August, 450 U.S. 346, 356 (1981). Under that reasoning, a plaintiff will be required to bear its own post-offer costs *and* the post-offer costs of the defendant when it fails to accept a reasonable offer of judgment. See Jolly v. Coughlin, No. 92-CV-9026(JGK), 1999 WL 20895 at *9 (S.D.N.Y. Jan. 19, 1999). An offer of judgment is reasonable if it is equal to or greater than the sum of the award granted at trial and reasonable attorney's fees and costs up to the date of the offer.

Defendant's March 22, 2007 offer of judgment was in the amount of $4,000, inclusive of attorney's fees. As plaintiff was awarded $1,000 at trial, that offer was reasonable only if plaintiff's attorney's fees up until the offer were $3,000 or less. According to Attorney Blinn's fee affidavit, he had accumulated $9,622.78 in fees and costs prior to defendant's offer of judgment. **[Dkt. #70]**. His rejection of defendant's offer was therefore unreasonable only if the $6,622.78 of the claimed attorney's fee above the $3,000 accounted for in defendant's offer was itself unreasonable. The

-5-

court finds that plaintiff's attorney's fees reasonably exceeded $3,000 at the time of defendant's offer of judgment, and that plaintiff's rejection of that offer was therefore reasonable.

In its opposition to plaintiff's fee application, defendant provides a list of items on plaintiff's fee request that are specifically connected to plaintiff's unsuccessful claims. Defendant argues that these items are unreasonable and should be deducted. Without ruling on the merits of each of these proposed deductions, the court finds that to credit every one of defendant's proposed deductions would serve only to reduce plaintiff's pre-offer fee to $6,546, which is still substantially higher than the $3,000 threshold. Defendant alternatively claims that the court should apply an across-the-board reduction to plaintiff's fee request to account for partial success. Again, without deciding what overall reduction is appropriate, the court notes that it would have had to reduce plaintiff's fees by over sixty-eight percent to bring them down to $3,000.[2]

---

[2] According to Attorney Blinn's financial affidavit, he had accrued $9,622 in costs up until the offer of judgment. The court would have to impose a nearly sixty-nine percent deduction to that number to reduce it to $3,000. Again, without ruling on the merits, if the court were to credit all of defense counsel's proposed deductions to Attorney Blinn's claimed pre-offer of judgment costs, the resulting sum would be $6,546. The court would have to impose a fifty-four percent reduction to that number to reduce it to $3,000. The court finds that the magnitude of these downward adjustments, required under either scenario before defendant's offer of judgment could be characterized as "reasonable," would be unduly harsh, for the reasons stated

To apply such an extreme reduction to plaintiff's *pre-offer of judgment* costs would be unduly harsh given the allegations in this case and the case law in this area. While the decision to pursue a claim may ultimately prove disappointing, arriving at that juncture often requires extensive investigation and research in the early stages of litigation. Although it is sometimes immediately apparent that a claim is not worth pursuing, very often significant preliminary work must be done before the vulnerability of a claim is apparent. Thus, while much of the work done in pursuit of some of the claims in this case may have been fruitless, it does not necessarily follow that all of the *early* work done was unreasonable. Either way, the extent of reduction to plaintiff's fee requests that would be necessary to characterize defendant's offer of judgment as "reasonable" unrealistically Draconian in the circumstances.

Rule 68 is a powerful and potentially effective tool for facilitating settlement, and the court encourages litigants to employ offers of judgment in that pursuit. Had the circumstances of this case been slightly different, it is conceivable that plaintiff could be held liable for the post-offer costs of both parties. Unfortunately for the defendant, however, it either underestimated plaintiff's reasonable attorney's fees up until the point of offer, or determined that $4,000 was the maximum they were

_____

herein.

willing to offer.  Had they based their offer solely on a projected award, and left the determination of reasonable fees and costs to the court, the disposition of this fee application may well have been quite different.  Under such circumstances, if the court had determined an amount of fees and costs that, together with defendant's offer, made the Offer of Judgment "reasonable," plaintiff would have been required either to accept that offer or face the harsh consequences of covering all of her *and* defendant's post-offer fees and costs.

For example, in <u>Jolly</u>, 1999 WL 20895, the plaintiff failed to accept an offer of judgment that was more favorable than the judgment finally obtained at trial.  The defendant's offer of judgment was in the amount of $30,360.00, $360 more than the plaintiff ultimately recovered at trial.  <u>Id.</u> at *1.  The language of the <u>Jolly</u> defendant's offer, as it related to attorney's fees, was significantly different than the wording of CRI's offer.  It stated: "defendants hereby offer to allow judgment to be taken against them in this action, in the amount of thirty-thousand and three hundred sixty dollars [], *together with costs accrued to date.*"  <u>Id.</u> at *2 (emphasis added).  Had the <u>Jolly</u> plaintiff accepted the defendant's offer, it would have been up to the court to include in its judgment an additional amount which, in its discretion, it determined to be sufficient to cover costs and fees.  <u>See</u> <u>Marek</u>, 473 U.S. at 6.  Because the plaintiff rejected the

defendant's reasonable offer, the court required the plaintiff to bear its own costs *and* pay the defendant's costs. Fortunately for Plaintiff Rivera, CRI's offer was not couched in terms similar to those in <u>Jolly</u>.

The offer of judgment procedure set forth in Rule 68, if used promptly and correctly, could save substantial litigation costs and promote the just and speedy resolution of lawsuits like this one. A defendant who discovers a technical violation of the FDCPA should consider the economics of an immediate filing of an offer of judgment "up to $1,000 statutory damages plus reasonable fees to be decided by the court." Courts are capable of exercising sound discretion in determining how much statutory damages are appropriate, and what hourly rate is reasonable in the locality among lawyers of comparable skill and experience. Leaving the amount of attorney's fees to the discretion of the court avoids the pitfall of offering acceptable damages but fees that are unreasonably low, though only barely so.

## B. The Lodestar Figure[3]

_____

[3]

The court is aware of the decision of the Second Circuit Court of Appeals in <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110 (2d Cir. 2007). In that case, the Second Circuit acknowledged a "general confusion surrounding the lodestar calculation," and suggested a move away from the use of the term "lodestar." Due to its widespread use in both the relevant case law and the parties' filings in this case, the court will use the term in this decision and employ the analysis associated with the "lodestar method," initially developed by the Third Circuit. However, the court notes that it

Congress passed the FDCPA in 1968 in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors [which] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C.A §1692(a). Under 15 U.S.C. § 1692k, a plaintiff who has prevailed under the FDCPA is entitled to reasonable attorney's fees and costs. The Third Circuit has held that the FDCPA "mandates an award of attorney's fees [to a prevailing party] as a means of fulfilling Congress's intent that the act should be enforced by debtors acting as private attorneys general." Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991).[4] The threshold requirement

---

would consider the same factors, and arrive at an identical result if it instead employed either the Johnson method, outlined by the Fifth Circuit Court of Appeals in Johnson v. Georgia Highway Exp., Inc. 488 F.2d 714, 717-19 (5th Cir.1974), *overruled on other grounds by* Blanchard v. Bergeron, 489 U.S. 87, 109 (1989), or the method suggested by the Second Circuit in Arbor Hill. As noted in that decision, "[i]n practice . . . both [courts utilizing the Johnson method and those utilizing the lodestar method] considered substantially the same set of variables, just at different points in the fee-calculation process." Arbor Hill, 493 F.3d at 115.

[4] The opinion of the Court of Appeals of Minnesota, in Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671, 675 (1984) describes the strong public policy justification for mandatory fee awards in FDCPA cases:

Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. Unless consumers can recover attorney fees it may not be possible for them to pursue small claims. . . . [U}nscrupulous collection agencies have little to fear

that the movant be a "prevailing party," has been defined by the United States Supreme Court as "one who has succeeded on any significant claim affording it some of the relief sought," <u>Texas State Teachers Ass'n v. Garland Independent School Dist.</u>, 489 U.S. 782, 791 (1989), or one who can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." <u>Hewitt v. Helms</u>, 482 U.S. 755, 760-61 (1987).

The amount awarded is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983); <u>Orchano v. Advanced Recovery Inc.</u>, 107 F.3d 94, 98 (2d Cir. 1997). The product of this calculation is called the "lodestar" figure. <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999). The party requesting fees bears the burden of proving reasonableness by way of an affidavit detailing the time spent working on the case and the fees charged. <u>Lieberman v. Dudley</u>, No. 395CV2437(AHN), 1998 WL 740827, at *5 (D. Conn. July 27, 1998) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 895-96 (1984)). When a plaintiff achieves success on the merits, "an award of . . . the lodestar figure [] is presumptively appropriate." <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 234 (2d Cir. 1985).

---

from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs.

Despite this presumption, a district court has broad discretion to fashion a reasonable award of attorney's fees under the FDCPA. <u>Norton v. Wilshire Credit Corp.</u>, 36 F. Supp. 2d 216, 219 (D.N.J. 1999). The Fifth Circuit outlined twelve factors to be considered by a court in determining what, if any, attorney's fees should be awarded in <u>Johnson v. Georgia Highway Exp., Inc.</u>, 488 F.2d 714, 717-19 (5th Cir.1974), *overruled on other grounds by* <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 109 (1989).[5] The United States Supreme Court, in <u>Hensley</u>, 461 U.S. at 436, acknowledged that the <u>Johnson</u> factors are relevant to evaluating claims for attorney's fees, noting that the most critical factor is the degree of success obtained. It is therefore within the discretion of a district court to make downward adjustments to the lodestar figure based on the degree of success obtained by a plaintiff. This is rooted in the important threshold requirement that a movant be a prevailing party before attorney's fees are awarded.

A party advocating for reduction of the lodestar figure bears

---

[5]    The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Johnson</u>, 488 F.2d at 717-19.

the burden of establishing that a reduction is justified. <u>See</u> <u>U.S.</u>
<u>Football League v. National Football League</u>, 887 F.2d 408, 413 (2d
Cir. 1989). Such an argument cannot be grounded in lack of
proportion between the amount of attorney's fees requested and the
size of the award attained, as the FDCPA, like many other consumer
protection and civil rights statutes, "was enacted in part to
secure legal representation for plaintiffs whose . . . injury was
too small, in terms of expected monetary recovery, to create an
incentive for attorneys to take the case under conventional fee
arrangements." <u>Kassim v. Schenectady</u>, 415 F.3d 246, 252 (2d Cir.
2005). Rather, the principle behind any argument for reduction of
the lodestar amount should be to assure that fees are awarded only
to the extent that the litigation was successful. <u>See</u> <u>Norton</u>, 36
F. Supp. 2d at 219. "A reduced fee award is appropriate if the
relief, however significant, is limited in comparison to the scope
of the litigation as a whole." <u>Hensley</u>, 461 U.S. at 440.

Plaintiffs often present multiple claims and theories for
relief, each with a range of potential awards,

> involving numerous challenges to institutional practices
> or conditions. . . . Although the plaintiff often may
> succeed in identifying some unlawful practices or
> conditions, the range of possible success is vast. That
> the plaintiff is a "prevailing party" therefore may say
> little about whether the expenditure of counsel's time
> was reasonable in relation to the success achieved.

<u>Hensley</u>, 461 U.S. at 436. A court, then, should ask itself two
questions when considering a reduction in fee awards based on

limited success. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which (s)he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for a fee award? Id., at 434. If the court answers the first question affirmatively, then it should make a downward adjustment to ensure that the applicant is not awarded fees for work expended on an unrelated, unsuccessful claim. Alternatively, if the court determines that the claims are related, a court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

If a court chooses to make downward adjustments, it may either reduce the overall award or attempt to identify specific hours that should be eliminated. Id. at 436-37. In a case where a plaintiff presents distinctly different claims for relief that are based on different facts and legal theories no fee should be awarded for services on the unsuccessful claim. Id. at 434-35. The law also requires a court to exclude claimed hours from its lodestar calculation that it finds to be "excessive, redundant, or otherwise unnecessary." Reiter v. Metropolitan Transp. Auth. of State of New York, No. 01CV2762(GWG), 2007 WL 2775144 at *9 (S.D.N.Y. September 25, 2007) (quoting Hensley, 461 U.S. at 434)). There is no precise rule or formula for making these determinations, and, because "it is unrealistic to expect a trial judge to evaluate and rule on

every entry in an application," a court may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." <u>New York State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146 (2d. Cir. 1983).

## 1. Plaintiff as a Prevailing Party

Defendant does not contend, nor can it be reasonably argued, that plaintiff here was not a prevailing party under the FDCPA. The jury's award of statutory damages represented success for plaintiff on a "significant claim affording it some of the relief sought," and changed the legal relationship between plaintiff and defendant by requiring that CRI pay $1,000 in statutory damages. <u>See</u> <u>Texas State Teachers Ass'n</u>, 489 U.S. at 791; <u>Hewitt</u>, 482 U.S. at 760-61. Thus the court finds, as a threshold matter, that plaintiff is a prevailing party under the FDCPA, entitling her to reasonable attorney's fees and costs.

However, plaintiff's success in this case was substantially limited.[6] Plaintiff argued that CRI had failed to comply with the

---

[6] The only aspect of this case on which plaintiff was victorious was the technical violation that the defendant admitted. One can only speculate what the jury would have done had defendant not so stipulated. In the court's view, there is an excellent chance that the jury would have accepted Jose Sobrino's testimony that the only reason he did not give plaintiff timely written notice of her right to dispute the debt was that in his previous phone conversations with the plaintiff she had informed him that she disputed the debt, thus manifesting her knowledge of the very information the notice was intended to impart. Technically, this may not have been sufficient to excuse the violation as a matter of law, but it nonetheless might have persuaded the jury, given the superior

timely mailing requirement of the FDCPA, that debt collector Jose Sobrino had engaged in several instances of misconduct in his telephone communications with plaintiff, that the misconduct had caused plaintiff severe distress, and that plaintiff had suffered actual damages as a result. In support of these contentions, plaintiff offered the testimony of numerous witnesses, including her son Angel Mercado, her friend Gladys Guzman, and plaintiff herself. Unfortunately none of these witnesses were at all persuasive. On the other hand, defendant's witnesses, most notably Sobrino, were persuasive in the testimony they offered to refute plaintiff's claim. It is an understatement to say that Sobrino was a "good witness." He was an excellent witness. His testimony was clear and detailed. He was unevasive and sincere. The contrast between the quality of his testimony and that offered on plaintiff's behalf was striking.

As a result, though they found for plaintiff on the one technical FDCPA violation that CRI had stipulated to, the jury unequivocally rejected the remainder of plaintiff's contentions, finding for CRI on the six other claimed FDCPA violations (the "telephone violations") and on the issues of intentional infliction of emotional distress and actual damages. This unequivocal repudiation of virtually all of plaintiff's case leads the court to conclude that, although she is a prevailing party, her success was

---

quality of Mr. Sobrino's testimony.

extraordinarily limited.   In these circumstances, the court believes that a drastic reduction in the amount of fees is required.

## 2. The Lodestar Figure

The court finds that plaintiff's initial calculation of the lodestar figure is based on a reasonable and appropriate evaluation of the value of Attorney Blinn's services.   Attorney Blinn is a highly skilled and experienced litigator, particularly in the area of consumer protection litigation, and conducted himself accordingly throughout the litigation.   Adjudication of a fee application often requires analysis of the hourly rate claimed by the applicant, with reference to the rates charged by similar attorneys in similar cases.   In this case, attorney Blinn seeks fees at $325 per hour, and has submitted an affidavit detailing the time spent on this litigation at that rate.   Attorney Blinn also goes to some lengths in his memorandum in support of his application to explain to the court why such a rate is reasonable in this case.   Defendant does not dispute Attorney Blinn's claimed rate, and this court finds that rate is both consistent with those requested in similar cases and reasonable in light of Attorney Blinn's skill and experience as an attorney.   Thus, no downward adjustment to the lodestar figure is required on these grounds.

## 3. Unnecessary Work

Plaintiff was wholly successful in pursuit of her FDCPA claim;

the jury awarded her $1,000, the maximum allowed under the statute. Thus no reduction should be made to the lodestar figure under the theory that plaintiff had "limited success" in the litigation of this claim. However, it is the charge of the court to also exclude hours that were not reasonably necessary to the successful litigation of this claim. Here, the jury made their award after finding for the plaintiff on only one of the seven claimed FDCPA violations. Specifically, the jury found that CRI had failed to comply with the FDCPA's timely mailing requirement, which CRI stipulated to in its "Stipulation of Uncontested Facts and Law." Because the jury rejected plaintiff's claim that CRI had committed six other FDCPA violations, this court finds that a reduction of plaintiff's fee awards is merited, as work done in pursuit of those claims was "excessive, redundant, or otherwise unnecessary." See Reiter, 2007 WL 2775144 at *9.

Importantly, the nucleus of facts from which the failed FDCPA claims purportedly arose is distinct from that of the stipulated violation. That is essential to this analysis, as it reveals that the work done in relation to the six unsuccessfully claimed violations cannot rightly be said to have contributed to the successful establishment of the seventh. The stipulated violation required a showing that CRI had failed to "give the plaintiff written notice of the amount of the debt, the name of the creditor to whom the debt is owed, a statement regarding the plaintiff's

right to dispute the debt and to require the defendant to verify the debt within five days after the initial communication." 15 U.S.C. § 1692g. Establishing this ultimately required gathering and presenting evidence that tended to prove that CRI had failed to timely issue such a notice. CRI's stipulation to this violation made it unnecessary for plaintiff to belabor this claim at trial. However, the record is sufficiently developed to reveal that the "nucleus of facts" from which the stipulated violation arose would be the product of the following essential inquiry: did CRI, after their telephone conversation with plaintiff but before the statutory deadline, generate and mail to plaintiff a writing that complies with § 1692g?

On the other hand, the six other claimed violations of the FDCPA *all* pertain to the substance of the telephone communication between Sobrino and plaintiff. For example, plaintiff claimed that Sobrino threatened to have her arrested, failed to inform her of the details of the debt collection, and made deceptive or misleading statements to her. The nucleus of facts underlying the telephone violation claims was the product of the following essential inquiry: what did Sobrino say and not say to plaintiff, how did he say it, and what were his intentions? This is a wholly distinct inquiry from that required for the stipulated violation, giving rise to facts of a significance that is truly independent of the timing and contents of the required mailing.

Plaintiff committed substantial time and resources towards establishing these violations throughout the litigation. Again, the court notes that plaintiff's witnesses on this point were thoroughly unconvincing, while Sobrino's testimony was forthright and credible, bolstered further by the complete absence of similar complaints against him on his record. The result was an unequivocal rejection by the jury of plaintiff's claim that CRI had committed the telephone violations.

While the jury still awarded plaintiff the maximum allowable damages under the FDCPA, justice requires a reduction of the fee request to account for time unnecessarily and unsuccessfully spent litigating six out of the seven claimed FDCPA violations. Focus on the one FDCPA violation that was ultimately proved was clearly justifiable, evidenced by defendant's ultimate willingness to stipulate to that violation. As for the six other violations, plaintiff had no evidence to support them other than her unimpressive testimony and that of her witnesses.

Plaintiff seriously miscalculated how her and her witnesses' testimony would be received. It may well have been a good faith miscalculation, but it is not one which will be rewarded. The purpose of the FDCPA is not advanced by encouraging litigants to bring claims that are this weak. The $1,000 jury award was based on the stipulated violation, and plaintiff's attempts to establish the other six violations needlessly added to the time and costs

required to dispose of this case, and were not a factor in that $1,000 award. Reduction of the plaintiff's fee award is appropriate and necessary on these grounds.

## 4. Limited Success

Plaintiff's success in this case was unquestionably limited. She presented two distinct claims - one for statutory violations and the other for intentional infliction of emotional distress and actual damages - only one of which was successful. Thus, while plaintiff is a prevailing party under the FDCPA, justice requires that she only be awarded attorney's fees to the extent that the litigation was successful. First, the court must determine whether the two claims are unrelated; that is, do they arise from a common nucleus of facts or related legal theories? If not, the court must then determine whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for a fee award. Finally, if the court determines that a reduction of the lodestar figure for lack of success is appropriate, it must then determine the extent of that reduction. See Hensley, 461 U.S. at 434-37.

First, the court finds that the two claims were related under the law, though barely. Much of the work required to establish the second claim was in fact completely unrelated to the successful claim. The FDCPA claim focused solely on the alleged misconduct of the defendant. The intentional infliction of emotional distress

and actual damages claim concerned the effect that alleged misconduct had on plaintiff. This involved a substantial commitment of time and resources throughout the litigation towards securing medical records, speaking with doctors, and gathering testimonial evidence from plaintiff and others regarding the emotional and physical impact of defendant's alleged misconduct on plaintiff. On the other hand, the misconduct that plaintiff claims CRI engaged in here is exactly the same misconduct that she claims in her FDCPA claims. The interrelation between plaintiff's claims is essentially as follows: (1) that defendant engaged in numerous acts of misconduct that amounted to violations of the FDCPA; and (2) such conduct caused emotional distress and actual damages to the plaintiff. Because many of the same facts underlie claims, the court finds as a matter of law that the claims were related.

The inquiry does not end there, however. Attorney Blinn correctly references the United States Supreme Court for the proposition that, when a court finds that different claims "involve a common core of facts . . . the fee award should not be reduced *simply* because the plaintiff failed to prevail on every contention of the lawsuit." <u>Hensley</u>, 461 U.S. at 435. Such reference oversimplifies the Supreme Court's holding on this issue, though. The court in <u>Hensley</u> elaborated that, when a court is considering reducing a fee in a case with related claims "it is the result that matters." <u>Id.</u> at 435. It stated:

Where a plaintiff has achieved excellent results, his attorney should recover a fully compensatory fee. . . . If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours spent times a reasonable hourly rate may be an excessive amount. This will be true *even where the plaintiff's claims were interrelated*, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit. . . . [T]he most critical factor is the degree of success obtained.

Id. at 436 (emphasis added). Here, the court finds that plaintiff did not achieve excellent results. While she succeeded in one of seven of her FDCPA claims, the jury unequivocally found for defendant on her claim for actual damages and intentional infliction of emotional distress. Given the significant emphasis placed on this claim throughout the litigation, it cannot rightly be characterized as a minor or peripheral component of the lawsuit. Plaintiff's inability to secure a favorable jury verdict on that claim represented a substantial failure.

The court will not employ a strictly mathematical approach of reducing plaintiff's fee by fifty percent to reflect that she only succeeded on fifty percent of her claims. Such an approach ignores the reality that separate claims in the same lawsuit are often on unequal footing, requiring different emphasis, priority, and investment of time and resources. The court recognizes that some of the work committed to this claim was related to plaintiff's other, successful claim. The court also recognizes that pursuit of the FDCPA claim may have required a disproportionate amount of time

and resources, although that is not clear from the record. Nevertheless, this claim was a significant component of the litigation, plaintiff was unsuccessful in proving it to the jury, and much of the work it required in no way contributed to the success of plaintiff's FDCPA claim. Further reduction of plaintiff's fee award is thus necessary, not *simply* because plaintiff failed to prevail on every contention of the lawsuit, but in recognition of her partial and limited success.

## 5. Downward Adjustment of the Lodestar Figure

The court therefore concludes that a significant reduction to the lodestar figure is warranted in this case. As work done in pursuit of the six unsuccessful FDCPA claims was "excessive, redundant, or otherwise unnecessary," a reduction is appropriate. See Reiter, 2007 WL 2775144 at *9. Additionally, plaintiff's partial and limited success in the litigation warrants further downward adjustment to the lodestar figure. As is within its discretion, the court will apply an across-the-board percentage cut when reducing the lodestar figure, rather then eliminating specific hours from plaintiff's fee request. First, it would be exceedingly difficult from the record before the court to identify which hours were specifically committed to the six unsuccessfully claimed FDCPA violations. Second, although defendant has identified several items on Attorney Blinn's affidavit that are clearly connected to the unsuccessful emotional distress claim, the court recognizes

that it is unrealistic, if not impossible, to properly identify the precise amount expended on this claim solely by reference to those items. With these considerations in mind, the court reduces plaintiff's fee by seventy-percent, resulting in a fee award of $9,195.83.

## 6. Proportionality

The court emphasizes that proportionality between the jury award and the fee request played no role in its decision to reduce the lodestar figure. As discussed, reducing a fee request simply because it is disproportionate to a damage award runs contrary to the policies underlying the FDCPA and overestimates the extent to which an individual litigant can control the expenses of a lawsuit. The reductions of the lodestar figure outlined herein are based on the court's dual determinations that plaintiff ultimately achieved only limited success, and that much of the work underlying the fee request was not reasonably necessary to achieving that success. The court addresses the proportionality issue separately in response to Attorney Blinn's citation of several cases in his memorandum in support of his fee application. **[Dkt. #69].**

In each of these cases, a successful FDCPA plaintiff was awarded significant attorney's fees despite a low recovery. However, each of these cases is clearly distinguishable from the case at hand. It is true that the court in Nelson v. Select Financial Servs., Inc., No. Civ.A. 05-3473, 2006 WL 1672889 at *1

(E.D.Pa. June 9, 2006) awarded plaintiff $24,000 in fees, despite only granting a $1,000 statutory recovery. The <u>Nelson</u> plaintiff did not claim actual damages in that case, so the $1,000 recovery, though disproportionately small, represented a complete success of the litigation. <u>Id.</u> at *2. In <u>Gardisher v. Check Enforcement Unit</u>, No. 00-CV-401, 2003 U.S.Dist. LEXIS 753 (W.D. Mich. 2003) the court awarded over $69,000 in attorney's fees where plaintiff had recovered $1,000 in FDCPA statutory damages. Again, plaintiff did not request actual damages in that case, meaning her recovery was a complete success. <u>Id.</u> at *23.

In <u>Armstrong v. Rose Law Firm, P.A.</u>, No. CIV. 00-2287MJD/SRN, 2002 WL 31050583 (D.Minn. Sep. 05, 2002) the court awarded $43,000 in attorney's fees where the plaintiff had received $1,000 in statutory damages but failed to prove her actual damages. The court declined to reduce the fee request because it found that because "[p]laintiff's attorney spent virtually no time preparing the case for actual damages . . . attorney's fees related to this issue are negligible." <u>Id.</u> at *4. Finally, in <u>Perez v. Perkiss</u>, 742 F. Supp. 883, 892 (D.Del. 1990), the court awarded over $10,000 in attorney's fees despite a $1,200 damages award. Defendant's arguments for reducing the lodestar amount in that case focused on claims that the attorneys were fee motivated, and that the relative simplicity of the issues in the case did not justify the fees requested. <u>Id.</u> at 890-92. The court rejected those arguments, and

the defendant did not argue for any reduction for lack of success. _Id._

Every one of these cases is clearly distinguishable from the case at hand. Each of those plaintiffs were either wholly successful in the pursuit of their claims, or were found to have not accrued significant fees in advancing unsuccessful claims. Plaintiff here was not wholly successful in her litigation, and did in fact devote significant time and resources to the pursuit of her unsuccessful claim. The only remaining value of these cases for plaintiff is to remind the court that FDCPA fee awards are often disproportionately large. The court recognizes this and none of its deductions to the lodestar amount are motivated by any perceived disproportionality between the fee requested and the award granted in this case.

## C.   Costs

Plaintiff claims $92.59 in litigation costs. This number encompasses postage, facsimiles, copies, parking, and mileage for work done by plaintiff's attorney in this case. Defendant does not dispute the reasonableness of these costs, and the court finds that the request is reasonable. Plaintiff is awarded $92.59 in costs.

## III.   Conclusion

For the reasons stated herein, plaintiff's motion for attorney's fees and costs **[Dkt. #68]** is **GRANTED,** minus deductions. Plaintiff  is awarded $9,195.83 in attorney's fees and $92.59 in

costs.  Defendant Corporate Receivables, Inc. is **ORDERED** to pay attorney's fees of $9,288.42 within thirty days of this ruling.

This case is before the undersigned pursuant to  28 U.S.C. § 636(c) and D. Conn. Magis. R. 73(A)(1).  As such, this is a final ruling directly appealable to the United States Court of Appeals for the Second Circuit.  28 U.S.C. § 636(c)(3); D. Conn. Magis. R. 73(B)(1).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this** <u>**28th**</u> **day of March, 2008.**

<u>/s/TPS</u>
**Thomas P. Smith**
**United States Magistrate Judge**